UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **DR. KATHLEEN J. HARRIS** | **CIVIL ACTION NO. 12-2180** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **MONROE CITY SCHOOL BOARD** | **MAG. JUDGE KAREN L. HAYES** |

RULING

Pending before the Court is a Motion for a Temporary Restraining Order ("Motion for TRO") [Doc. No. 2] filed by Plaintiff Dr. Kathleen J. Harris ("Harris") against Defendant Monroe City School Board ("the Board"). Harris requests a temporary restraining order (1) enjoining the Board from conducting her termination hearing on August 16, 2012, (2) enjoining the Board from conducting a hearing on any date unless three of the Board members are recused, and (3) enjoining the Board from conducting the hearing until her request for preliminary and permanent injunctive relief can be heard. For the following reasons, the Motion for TRO is DENIED.

I.  **FACTS AND PROCEDURAL HISTORY**

Harris is currently the Superintendent of the Board and has served in that capacity since July 15, 2010. Under her employment contract, Harris' term does not expire until December 31, 2012.

However, on June 26, 2012, the Board adopted a resolution, which identified seven areas of concern with Harris' operation of the school system. The Board retained Dennis Blunt ("Blunt"), an outside attorney, to investigate these concerns. The Board placed Harris on paid administrative leave pending the outcome of the investigation.

At the conclusion of his investigation, Blunt prepared formal charges against Harris, which

were adopted by the Board by a 5-2 vote at a specially called meeting on July 26, 2012. The Board continued Harris' paid administrative leave.

The Board has now notified Harris and her attorney that it intends to conduct a hearing on August 16, 2012, at 1:00 p.m., to take evidence on the charges and to determine whether she should be terminated.

Prior to bringing the action in this Court, Harris filed a Petition for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction and Other Relief in the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana. On August 13, 2012, the Honorable Benjamin Jones issued a Ruling, denying Harris' request for a TRO and stating that "[t]here is not time to schedule a preliminary injunction hearing before Thursday, August 16th. Nor is there time in the Court's . . . docket to conduct a hearing." *Harris v. Monroe City School Board*, Docket No. 12-2502, Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, August 13, 2012 Ruling.

On August 14, 2012, at approximately 10:00 p.m., Harris filed a Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction and Other Relief [Doc. No. 1] and the instant Motion for TRO [Doc. No. 2].

The Court conducted a telephone status conference with counsel for both parties on August 15, 2012, at 1:30 p.m. At that time, counsel presented their arguments to the Court.

Having reviewed the case law and the facts in the Complaint and Motion for TRO, the Court now issues this ruling on the Motion for TRO.

II.  LAW AND ANALYSIS

    A.  *Colorado River* **Abstention**

As an initial matter, under *Colorado River Water Conservation District v. United States*, 424

U.S. 800 (1976), the Court has considered whether it should abstain from exercising its jurisdiction in light of the pending state court litigation.

It is the "virtual unflagging obligation of the federal courts to exercise the jurisdiction given them," and "'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Id.* at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Nevertheless, there are "extraordinary and narrow" circumstances under which a district court may abstain from exercising jurisdiction over a case when there is a concurrent state proceeding, based on considerations of "'[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 813, 816 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

"While declining to prescribe a 'hard and fast rule,'" the Supreme Court has identified six factors the Court may consider and weigh " in determining whether exceptional circumstances exist that would permit" it to decline to exercise jurisdiction:

(1) assumption by either court of jurisdiction over a res;

(2) the relative inconvenience of the forums;

(3) the avoidance of piecemeal litigation;

(4) the order in which jurisdiction was obtained by the concurrent forums;

(5) whether and to what extent federal law provides the rules of decision on the merits; and

(6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999) (citations omitted).

1. **Assumption by Either Court of Jurisdiction Over a Res**

This case does not involve any res or property over which any either the state court or this Court has taken control. The absence of this factor weighs against abstention.

2. **The Relative Inconvenience of the Forums**

Since both courts are located in Monroe, Louisiana, this factor is inapplicable, and its absence weighs against abstention.

3. **The Avoidance of Piecemeal Litigation**

The federal and state cases involve the same plaintiff, the same defendant, and some overlapping issues, namely the contractual disputes between the parties. To the extent that this parallel litigation is duplicative, not piecemeal, the Fifth Circuit is clear that "[t]he prevention of duplicative litigation is not a factor to be considered in an abstention determination."*Evanston v. Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988) (citing *Colorado River*, 424 U.S. at 817).

In the Complaint before this Court, Harris raises only federal constitutional Due Process claims, which are brought under 42 U.S.C. § 1983. While Harris' § 1983 claims could have been brought in state court, they were not, resulting in some piecemeal litigation. However, the Fifth Circuit has explained that the real concern with this factor is whether there would be the "danger of inconsistent rulings affecting property ownership." *Evanston*, 844 F.2d at 1192. There is no such danger here, and, thus, this factor, too, weighs against abstention.

4. **The Order in Which Jurisdiction Was Obtained By the Concurrent Forums**

It is clear that Harris first filed in state court before coming to this Court. Nevertheless, the Court is required to look both at the date of filing and the progress made in the two cases. *Id.* at

1190 (citation omitted). In the state case, Judge Jones' denial of her request for a TRO is the only action which has taken place. The two cases are at approximately the same stage of litigation. Therefore, this factor weighs against abstention.

### 5. Whether and to What Extent Federal Law Provides the Rules of Decision on the Merits

"'The presence of a federal law issue 'must always be a major consideration weighing against surrender [of jurisdiction],' but the presence of state law issues weighs in favor of surrender only in rare circumstances." *Murphy*, 168 F.3d at 739 (quoting *Evanston*, 844 F.2d at 1193 ) (other citation omitted). It is clear that federal law under § 1983 provides the rule of decision on Harris' Due Process claims. While Harris has also raised related state law contractual issues which will certainly provide a backdrop for consideration of her § 1983 claims, the primary thrust of her case is federal. Thus, this factor, too, weighs against abstention.

### 6. The Adequacy of State Proceedings in Protecting the Rights of the Party Invoking Federal Jurisdiction

"'If there is any substantial doubt'" as to whether a state court provides an adequate forum, "'it would be a serious abuse of discretion to grant the stay or dismissal at all.'" *Murphy*, 168 F.3d at 739 (quoting *Moses H. Cone Moses Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 28 (1983) (other citations omitted)). Though the Court has no doubt that the state court is an otherwise adequate forum to protect Harris' rights, Judge Jones stated in his ruling denying the TRO that docket constraints prevent him from considering Harris' preliminary injunction prior to the August 16, 2012 hearing. Further, Judge Jones was not even presented with the Due Process arguments set forth in the instant Motion for TRO. Under these circumstances, the final factor must also weigh against abstention.

Because the balancing of these factors clearly weighs in favor of the exercise of jurisdiction, the Court will now proceed to the merits of the Motion for TRO.

**B.     TRO**

Harris requests a TRO enjoining the Board from conducting the termination hearing scheduled for August 16, 2012, at 1:00 p.m. She further requests that the Court enjoin the Board from conducting the hearing on August 16 or any other date unless Board members Victoria Dayton ("Dayton"), Clarence Sharp ("Sharp"), and James Traweek ("Traweek") are recused from participating. Finally, she requests that the Court enjoin the Board from conducting the termination hearing until such time as her request for preliminary and permanent injunctive relief can be heard.

To obtain a temporary restraining order, "the moving party must establish four factors: (1) a substantial likelihood of success on the merits, (2) a substantial threat that failure to grant the injunction will result in irreparable injury, (3) the threatened injury outweighs any damage that the injunction may cause the opposing party, and (4) the injunction will not disserve the public interest." *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991). Injunctive relief "is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors." *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

Harris contends that without a TRO she "will be removed from office and her Superintendent pay will be terminated in violation of her Due Process and contractual rights." [Doc. No. 2, p. 4]. Relying on *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047 (5th Cir. 1997), Harris argues that the Board, "as presently constituted, cannot and will not give her a fair hearing that complies with Due Process and her contractual rights" because "Dayton, Sharp, and Traweek[] have demonstrated a bias

against . . . Harris that is irrevocable." [Doc. No. 2, p. 4].

In *Valley*, the Fifth Circuit addressed the potential effects on a superintendent's Due Process rights when a school board serves as both investigator and adjudicator. In that case, Dr. Betty Cox ("Cox") brought suit against the Rapides Parish School Board after she was suspended from her position as Superintendent. During the pendency of the lawsuit, the School Board held a hearing and voted to terminate Cox. Cox then amended her complaint to add a claim that her termination hearing failed to comport with the Due Process requirements of the Fifth and Fourteenth Amendments to the United States Constitution. She sought a TRO and a preliminary injunction restoring her to the superintendent position. The district court denied Cox's request for a TRO, but, after a hearing, granted the preliminary injunction. The School Board appealed to the Fifth Circuit, which affirmed the district court's decision.

At issue before the Fifth Circuit was whether Cox's Due Process rights were violated because four members of the School Board who voted to terminate her were irreversibly biased. At its base, "constitutional due process" requires a "fair and impartial tribunal." *Id.* at 1052. The Supreme Court has found that "decision makers are constitutionally unacceptable" in three specific circumstances: "(1) where the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) where an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) when a judicial or quasi-judicial decision maker has the dual role of investigating and adjudicating disputes and complaints." *Id.* (citing *Baran v. Port of Beaumont Navigation Dist. of Jefferson Cty.*, 57 F.3d 436, 444–46 (5th Cir. 1995)). Considering only the third circumstance, the Fifth Circuit explained that "[t]he problem of a procedural defect arises when the decision makers have prejudged the facts to such an extent that their minds are 'irrevocably closed'

before actual adjudication." *Id.* (citing *Baran*, 57 F.3d at 446).

"Nevertheless, bias by an adjudicator is not lightly established. The movant must overcome two strong presumptions: (1) the presumption of honesty and integrity of the adjudicators; and (2) the presumption that those making decisions affecting the public are doing so in the public interest." *Id.* at 1052-53. A plaintiff can overcome the presumptions if she convinces the court that "'under a realistic appraisal of psychological tendencies and human weaknesses, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Id.* at 1053 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

In the *Valley* case, the Fifth Circuit found that Cox met her burden and overcame the presumptions by presenting facts that unfolded "like a soap opera." *Id.* at 1055. Two board members were publicly embarrassed by her investigation of their abusive use of a Board telephone line, and they stated that their opinion of Cox changed after the investigation. A third board member made prehearing statements in public and to the media promising that Cox would be fired. Finally, Cox investigated the fourth board member's practice of self dealing prior to his election to the Board. The fourth board member also made statements in public indicating his intent to fire Cox. These facts, among others, provided a "clear impression of the rancor and deeply held views of the aforementioned school board members prior to the discharge hearing." *Id.*

The Court begins its analysis with the circumstance at issue in *Valley*: the potential bias that may result when a school board acts as both investigator and adjudicator. In this case, the Board, like the Rapides Parish School Board, serves both investigative and adjudicative roles. Unlike the Rapides Parish School Board, however, the Board did not conduct its investigation alone. Rather,

8

the Board retained an outside attorney, Blunt, to investigate its concerns. The Board only set a termination hearing after Blunt completed his investigation and prepared formal charges against Harris. This fact alone distinguishes the Board's actions. Nevertheless, given the Board's dual roles, the Court must also consider the allegations of bias against Dayton, Sharp, and Traweek.

For the purposes of this Ruling, the Court has accepted Harris' factual allegations in her Complaint and the Memorandum in Support of the Motion for TRO as true. Those facts are straightforward: Dayton, Sharp, and Traweek voted against hiring her initially, voted not to renew her contract at the end of her term, voted to investigate and suspend her, and gave her the lowest possible evaluation score. To be clear, Harris' only allegations are that these three Board members are biased and have irrevocably closed their minds because they have consistently voted against her and given her a poor professional evaluation. Given the "strong" presumptions that Board members act with honesty and integrity and in the public interest, these undisputed facts are insufficient to meet Harris' burden of showing that Dayton, Sharp, and Traweek have reached "prehearing commitments on questions of adjudicative fact." *Id.* at 1053.

In contrast to the Rapides Parish School Board members in *Valley*, Harris has presented no facts or even allegations that show that Dayton, Sharp, or Traweek have any reason to have developed personal rancor towards her. Harris does not allege that she conducted any investigations of these Board members, that she had any personal interactions with them to support her allegations, or even that they have made statements publicly or privately to suggest that their minds are irrevocably closed. In short, she has made no effort to provide the Court with any facts against Dayton, Sharp, or Traweek individually, but has focused solely on their official actions. The Court finds that the facts presented by Harris do not establish a substantial likelihood of success on the

merits on her Complaint.

Based on the Court's finding that Harris is unlikely to prevail on the merits of her claim that the hearing violates her Due Process rights, the Court need not reach the additional requirements for injunctive relief.

### C. Preliminary Injunctive Relief

Finally, the Court has considered whether a hearing on Harris' request for a preliminary injunction should be held this morning prior to the termination hearing. However, the Court considered the facts presented in Harris' Complaint and Memorandum in Support of the Motion for TRO as true, and the undisputed votes and evaluations of Dayton, Sharp, and Traweek are a matter of public record. Thus, no purpose would be served by holding a preliminary injunction hearing.

### III. CONCLUSION

For the foregoing reasons, Harris's Motion for a Temporary Restraining Order [Doc. No. 2] is DENIED. The August 16, 2012 termination hearing shall proceed with all Board members allowed to participate.

MONROE, LOUISIANA, this 16th day of August, 2012.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE